██ TOWN OF HARRISON, Respondent, v. COUNTY OF WESTCHESTER, Defendant and Cross Claimant-Appellant. COUNTY AIRPORT CORPORATION, Cross Defendant-Appellant.— In an action against the owner of certain real property for a money judgment for unpaid taxes, penalties and interest owing on the property for the years 1955 to 1963, inclusive, pursuant to section 583 of the Westchester County Administrative Code (hereinafter referred to as the Code [L. 1948, ch. 852, as amd.]), in which defendant, the County of Westchester, interposed a cross claim against its concessionaire, County Airport Corporation, said defendant and said cross-defendant appeal from (1) an order of the Supreme Court, Westchester County, entered June 7, 1965, which granted plaintiff's motion for summary judgment against defendant and severed the cross-claim and (2) a money judgment of said court in favor of plaintiff against defendant, entered the same day in pursuance of said order. Order and judgment modified (1) by striking from the last decretal paragraph of each the provision to the effect that interest is to be computed on the sum of $293,704.09 from December 1, 1964 (which is the date of the summons and of the verification of the complaint) "to the date of payment thereof"; and (2) by providing in lieu thereof that interest is awarded to plaintiff on said amount of $293,704.09 at the rate of 12% per annum from December 1, 1964 to the date of the entry of the judgment, June 7, 1965, namely, $18,249.84, and that the judgment shall bear interest at the rate of 3% per annum. As

so modified, order and judgment affirmed, with one bill of $10 costs and disbursements payable by appellants jointly. The subject real property is a relatively small part of the Westchester County Airport, specifically Tax Lot 8A, which constitutes most of Hangar D (the remainder of which hangar lies within the Town of Rye). The action is similar to a previous action (known as Action No. 3) in which this plaintiff procured a money judgment against the County of Westchester for unpaid taxes, penalties and interest owing on another hangar parcel in this airport, which is known as Tax Lot 8B and constitutes Hangar E (*Town of Harrison* v. *County of Westchester*, 44 Misc 2d 422, affd. 24 A D 2d 556). In a still earlier consolidated action (known as Actions Nos. 1 and 2) it was determined that both these hangar parcels were subject to taxation, because the statutory requirement for tax exemption to a municipality-owner, that the land must be "held for a public use" (Real Property Tax Law, § 406, subd. 1), was not satisfied (*Town of Harrison* v. *County of Westchester*, 34 Misc 2d 1020, affd. 18 A D 2d 1136, affd. 13 N Y 2d 258). We adhere to the determination in Action No. 3 that the right of action under section 583 of the Code is available to plaintiff even as against a property owner which is a municipality, such as the County of Westchester; that that section was not superseded or impliedly repealed as to municipality-owner by section 995 of the Real Property Tax Law, which affords the remedy of a proceeding under article 78 of the CPLR; and that the remedy under such a proceeding is not an exclusive one as against a municipality-owner. Further, we reject the additional theories which have been advanced in the instant action with respect to the issue of the applicability of section 583 of the Code as against defendant. The determination in the consolidated Actions Nos. 1 and 2 was not *res judicata* of any of the issues that the tax assessments were illegally or irregularly imposed. All that was there decided was the question of the basic taxability of the property, not whether the action of the tax authority lawfully carried out the power. If the judgment in the instant action were contrary to what it is, it nevertheless would not destroy or impair the right which was established by the judgment in the consolidated actions. Accordingly, the judgment in the consolidated actions is, so far as the present issues are concerned, not only not conclusive as to what was actually litigated therein but also as to any matters which might have been litigated in them (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304). However, defendant's sole remedy to challenge the tax assessments on the grounds of illegality or irregularity was to seek a judicial review of the assessments. Article 7, Title 1, of the Real Property Tax Law expressly authorizes the maintenance of a proceeding for such judicial review, on grounds which include illegality (see particularly, Real Property Tax Law, § 706). That statute made such remedy exclusive, thereby barring any collateral attack (see *Lewis* v. *City of Lockport*, 276 N. Y. 336). We grant that it may well be said that, in view of the short Statute of Limitations applicable to such remedy, namely, 30 days after the final completion and filing of the subject assessment roll (Real Property Tax Law, § 702, subd. 2), the statute should not be read as being suitable for a challenge of so much of the taxes here in question as were for the years 1955 to 1959, inclusive, since the pertinent respective assessment rolls therefor were not corrected (by the Town Board of plaintiff town) until long after the rolls for those years had been completed and filed; and that, therefore, such remedy of review cannot be an exclusive remedy as to those assessment rolls as originally completed and filed (see *Mercury Mach. Importing Corp.* v. *City of New York*, 1 A D 2d 337, revd. on other grounds 3 N Y 2d 418). However, adequate opportunity for instituting review proceedings

specifically as to the belated corrections, which corrections were authorized by plaintiff's Town Board in 1959, was afforded by section 557 of the Code. In any event, we have considered the grounds of illegality and irregularity which have been advanced by appellants and hold that they do not have merit. Plaintiff's Town Board corrected the assessment rolls for the tax years 1955 to 1959, inclusive, pursuant to the power granted to it in section 557 of the Code. That section patently was designed to permit correction of the very type of errors which had been made as to the subject property in the assessment rolls for those tax years. Enabling statutes such as this are valid (*People ex rel. Brooklyn City R. R. Co.* v. *Board of Assessors,* 92 N. Y. 430; *Western N. Y. & Penna. Ry. Co.* v. *City of Buffalo,* 176 Misc. 350, affd. 264 App. Div. 832, affd. 290 N. Y. 702; 1 Cooley, Taxation [3d ed.], pp. 526–527; id. [2d ed.], pp. 309–310). So far as appears, the corrections were not made in an ineffective manner. As to the alleged irregularities concerning delivery of the tax warrants to plaintiff's Receiver of Taxes and posting and publishing notices of such delivery of the warrants, the statutory procedures with respect to such warrants (Code, §§ 541, 550) have no bearing on the right of action here pursued by plaintiff. Those procedures are purposed only to give the Receiver of Taxes the authority to collect the taxes and to give the property owner and other interested parties notice of the tax levy (see *Getman* v. *Niferopulos,* 276 N. Y. 161, 168). Section 583 of the Code, which authorizes the bringing of an action such as the instant one, contains no provision making compliance with those procedural requirements a prerequisite to the bringing of the action. It was correct to allow interest in the judgment at the rate of 12% on the tax liens which were not sold, namely, the liens for the 1955, 1956 and 1957 taxes. It was also correct to allow interest with respect to the tax liens which were sold, namely, the liens for the taxes for 1958 to 1963, inclusive, as follows: 12% up to the respective times when the liens were sold; and, as to the respective periods of time commencing with the times of the sales, the particular rate at which the liens were sold, which happens to have been 12% per annum on every one of the sales, on the base of the total of the unpaid tax plus the 12% interest up to the time of sale. These rates are authorized by the following sections of the Code: Section 583 authorizes the addition to the amounts of the unpaid taxes such penalties as are permitted by article 16 (§§ 521 to 586, inclusive) of the Code (the article is entitled Westchester County Tax Law). Section 542 permits graduated scales of interest rates, with the particular rate to be applied being dependent on the time when payment is made. The highest rate permitted therein is 12%, and it is provided that that rate shall run "up to the time of sale, as hereinafter provided." Under section 558 the price of the sale of a tax lien must be (1) the amount of the unpaid tax plus "the penalties thereon, as hereinbefore provided," which is applicable here under section 542 is the 12% rate, and also plus the appropriate charges for notices and advertising, together with (2) the rate of interest, on the total of the amounts found under segment (1) of this sentence, which the purchaser has bid, and which may not be more than 12%. Sections 564 and 568 permit the property owner to redeem by paying an amount equal to the computation of all of this, including interest at the rate of the purchaser's bid calculated to various times generally related to the time of payment (see, also, § 571). In our opinion it was correct to adopt the interest formulæ as set forth in these sections of the Code so far as appropriate to an action such as the instant one. Defendant would have had to pay an amount consistent with this in order to redeem the property. As to the matter of post-judgment interest, plaintiff is not entitled to more than 3% per annum, the legal maximum

rate allowable against a municipal corporation upon any judgment (General Municipal Law, § 3-a, subd. 1). Regardless of what was the proper rate or rates for the obligation upon which the action was brought, the rate of interest which is to accrue on the judgment is only the rate which is authorized by the statute which governs post-judgment interest. It was so held in an action to recover unpaid taxes (*People* v. *Wiebolt & Co.*, 357 Ill. 208; see, also, *City of New York* v. *Shapiro*, 129 F. Supp. 149) and in actions on contract (*O'Brien* v. *Young*, 95 N. Y. 428; *Taylor* v. *Wing*, 84 N. Y. 471, 477). Christ, Hill and Benjamin, JJ., concur; Beldock, P. J., and Rabin, J., dissent and vote to affirm the order and judgment, with the following memorandum: In our opinion, plaintiff is entitled to interest at the rate of 12% per annum on the judgment, not only by reason of our prior determination in *Town of Harrison* v. *County of Westchester* (24 A D 2d 556), but because that rate of interest is mandated by section 583 of the Westchester County Administrative Code, enacted subsequent to section 3-a of the General Municipal Law, and specifically applicable to Westchester County. The holding by the majority that plaintiff is entitled to 12% interest up to the date of judgment and 3% after judgment has several illogical results: (1) It penalizes plaintiff for an early entry of judgment and gives defendant property owner a benefit by delay in payment; (2) The statute provides that the unpaid tax item is a lien until paid (Westchester County Administrative Code, § 560, subd. [b]). Yet it fixes different rates of interest accruing to the date of payment, depending on the date of entry of judgment; and (3) If this were a declaratory judgment action and the judgment merely declared that defendant was liable for the tax, there is no question that the 12% interest rate would be applicable. There is no reason why there should be a 3% post-judgment interest rate because this was a money judgment instead of a declaratory judgment. Finally, the wording of the statute making the unpaid tax a lien until paid prevents the merger of this tax obligation (which would carry 12% interest) into a judgment obligation. [46 Misc 2d 1035.]